DAVID W. DULIN *v.* STATE OF INDIANA.

[No. 1-775A131. Filed May 20, 1976. Rehearing denied July 29, 1976. Transfer denied September 29, 1976.]

*John S. Capper, IV,* of Crawfordsville, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Appellant (Dulin) brings this appeal from the revocation of his probation and the order of the trial court that he serve the balance of a sentence previously imposed. Dulin presents two issues for our consideration:

I) Whether the trial court should conduct a preliminary hearing to test the validity of a search warrant before the fruits of the search are admitted into evidence at a probation revocation hearing.

II) Whether probation can be revoked upon evidence of the commission of a crime although there has been no prior adjudication of guilt based on such evidence.

## FACTS:

In January, 1975, Dulin was charged with possession of marijuana and a smoking apparatus. The next month, Dulin pleaded guilty to possession of less than twenty-five (25) grams of marijuana, and the second charge was dismissed.

At sentencing, the trial judge suspended execution of a one (1) year term and placed Dulin on probation for a like period. Dulin's probation was subject to numerous conditions, only two of which are pertinent to this appeal, to-wit:

"4. Defendant is not to use marijuana, hashish or any substance which may be defined as a controlled substance or a dangerous drug under the law during the time of this probation except upon the prescription of a qualified physician.

\* \* \*

"9. Defendant is to conduct himself in such a manner that no one has any occasion to question whether or not he has violated the law. That means that if anyone has sufficient grounds to think that he should be arrested or charged, that may be a violation of the terms and conditions of probation, and so much as a traffic ticket could be enough to revoke the probation. This goes not so much to the act, but to the mental attitude of respect for the law and ability to abide by the law."

The day after Dulin was placed on probation Officer Swenke of the Crawfordsville Police received a telephone message from an informer who stated that Dulin had marijuana in his automobile. At the probation revocation hearing Swenke stated that the informer gave his name, and that his voice was familiar. Swenke immediately informed the prosecutor of this information, and they eventually presented a city court judge with an affidavit and request for a search warrant.

After receiving the search warrant Swenke proceeded to Dulin's place of employment and conducted a search of Dulin's automobile. The search revealed a plastic bag containing plant-like material which was eventually identified as marijuana. Dulin was arrested and charged with possession of a controlled substance. However, Dulin was never brought to trial, and the charges were dismissed.

As a result of the above search and seizure[1] a petition to revoke Dulin's probation was filed, and a hearing date was set. At the hearing, Dulin objected to the evidence seized under the search warrant, and requested a preliminary hearing to test the validity of the warrant. This request was denied.

---

1. It is not clear from the record whether Dulin's probationary status was known to Officer Swenke, and/or whether such status thus prompted the search.

However, during the hearing Swenke was examined at length concerning the information contained in the affidavit. The trial court concluded that Dulin had violated condition number nine (9) as set out at the sentencing proceeding, that probation should be revoked, and that Dulin be committed for the remainder of his one (1) year sentence.

## I.

Dulin first contends that the trial court erred in not conducting a preliminary hearing to test the legality of the search warrant which was used to seize the marijuana from his car. Dulin argues, citing *Ewing* v. *State* (1974), 160 Ind. App. 138, 310 N.E.2d 571, that evidence which is not admissible at a criminal trial is not admissible at a probation revocation hearing. Thus, Dulin concludes that, as in criminal trials, a separate preliminary hearing on the search warrant was required, and that such a hearing would have revealed the warrant was defective for lack of specificity with regard to the knowledge, credibility and reliability of the informant relied upon by Officer Swenke and the judge of the city court.

The question posed by Dulin's argument is one of first impression for this court. Earlier opinions by this and our Supreme Court have clarified certain aspects of the probation revocation process, see, *Russell* v. *Douthitt* (1973), 261 Ind. 428, 304 N.E.2d 793; *State ex rel. Gash* v. *Morgan County Superior Court* (1972), 258 Ind. 485, 283 N.E.2d 349; *Ewing* v. *State* (1974), 160 Ind. App. 138, 310 N.E.2d 571, but none have dealt with the applicability of search and seizure principles to this narrow area of criminal procedure. We are not, however, without direction in our search inasmuch as the United States Supreme Court, the several lower federal courts, and other state courts have considered the problem now before us. In addition, our statutes lend some assistance.

The fountainhead of modern probation/parole revocation procedure is the opinion of the United States Supreme Court

in *Morrissey* v. *Brewer*, 408 U.S. 471 (1972). This case was followed by *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973), which expressly equated parole and probation revocation by stating:

> "Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one. Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." (Footnotes omitted.)
> 411 U.S. at 782.

Thus, while *Gagnon* is obviously applicable, much of what said in *Morrissey* is also pertinent.

In discussing the proper procedure for revoking parole, the *Morrissey* court addressed the problem as follows:

> "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Cf. *Mempa* v. *Rhay*, 389 U.S. 128 (1967). Parole arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive. Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."
> 408 U.S. at 480.

The conditional nature of a probationer's/parolee's liberty is emphasized by the language of our statutes:

> "The several circuit and criminal courts and the city and municipal courts in the cities of the first and second class of this state, shall have power, in any case where any person shall have been convicted of a felony or misdemeanor ,or shall have entered his plea of guilty to a charge of felony or misdemeanor, upon the entry of judgment of conviction of such person, to suspend such sentence and parole such person, by an order of such court, duly entered of record as a part of the judgment of the court in such case, . . . *whenever such court, in the exercise of its judgment and discretion,* shall find and determine that such

person has committed the offense for which he or she has been convicted under such circumstances as that, in the judgment of such court, such person should not suffer the penalty imposed by the law for such offense *if he or she shall thereafter behave well,* or whenever such court shall find and determine that by reason of the character of such person, or the facts and circumstances of such case, the interest of society does not demand or require that such person shall suffer the penalty imposed by law if he or she shall thereafter behave well." (Our emphasis.)

IC 1971, 35-7-1-1 (Burns Code Ed.)

*"The court placing a defendant on probation shall impose such conditions as it may deem best. The court may subsequently revoke or modify any condition of probation or may change the period of probation.* While on probation the defendant may be required to pay in one [1] or several sums, a fine or costs imposed at the time of being placed on probation, or may be required to make restitution or reparation to the aggrieved party or parties for actual damages or loss caused by the offense for which conviction was had, or may be required to provide for the support of any person or persons for whose support he is legally responsible." (Our emphasis.)

IC 1971, 35-7-2-1 (Burns Code Ed.)

Of course, all of the above does not mean that probationers are completely deprived of constitutional rights or, because of their status, automatically subject to unreasonable or oppressive conditions. As was stated in note 4, at page 782 of *Gagnon:*

"It is clear at least after *Morrissey* v. *Brewer,* 408 U.S. 471 (1972), that a probationer can no longer be denied due process, in reliance on the dictum in *Escoe* v. *Zerbst,* 295 U.S. 490, 492 (1935), that probation is an 'act of grace.'"

At this point, however, we are not concerned with the nature of the conditions imposed upon Dulin. Rather, we must consider the evidence introduced at the revocation hearing which the trial court found sufficient to indicate that Dulin had in fact violated a particular condition.

It should be noted that Dulin did not expressly waive any constitutional rights as a condition of probation, and we do

not here decide the propriety of such a condition. See generally, *People* v. *Mason* (1971), Cal., 488 P.2d 630; *Himmage* v. *State* (1972), Nev., 496 P.2d 763. Assuming *arguendo,* that the search here complained of was improper, we must decide whether, and to what extent, Dulin's status as a probationer implicitly affects his right against unreasonable searches and seizures.

At the federal level, several jurisdictions have adopted a type of balancing approach, as indicated by the language from *United States* v. *Rushlow,* 385 F. Supp. 795, 797 (S.D.Cal., 1974):

"A probation revocation proceeding is concerned with the rehabilitation of those placed on probation as well as the protection of society. In deciding whether to extend the exclusionary rule to probation revocation proceedings, the court must weigh the benefits that may accrue from such an application of the rule against the needs of and potential injury to the probation system.

"In *United States* v. *Allen,* 349 F. Supp. 749 (N.D. Cal. 1972), the court was reluctant to extend the exclusionary rule to probation revocation hearings. The court observed:

'. . . [T]o burden revocation proceedings and possibly other aspects of the probation system with technical procedural and evidentiary rules similar to those required at the pre-trial and trial phases of our criminal justice system would be counter-productive, compelling a substantial re-direction of probation's limited manpower away from important supervision and counselling services.' *Id.* at 754.

"An examination of the needs of the probation system and rationale behind the exclusionary rule suggest that an extension of the exclusionary rule is unwarranted at this time. However, should the facts suggest that a probationer is the object of constant police harassment, the need for deterring such misconduct would justify such an extension of the rule. *See, United States* v. *Brown,* 488 F. 2d 94, 95 (5th Cir. 1973).

"Assuming, *arguendo,* that the stop of the defendant at the San Clemente checkpoint was unlawful, the need for deterring unconstitutional searches and maintaining the integrity of the judiciary is satisfied by the suppression of illegally seized evidence in criminal prosecutions. The added

deterrent value of applying the exclusionary rule to a probation revocation proceeding is, at best, minimal.

"Absent evidence of police harassment or misconduct designed to elicit a probation violation, this court will not apply the exclusionary rule to a probation revocation hearing."

See also, United States ex rel. Lombardino v. Heyd, 318 F. Supp. 648 (E.D. La. 1970).

Similar statements are found in opinions at the appellate level:

"It was the contention of Farmer that the search was illegal, and that therefore his rights under the Fourth Amendment to the Constitution had been violated.

\* \* \*

"[The] cases [relied upon] are authority for the proposition that a defendant is entitled to a hearing in probation and parole revocation proceedings as a matter of due process of law, and in some cases, to the appointment of counsel. However, the inquiry at such hearings is a narrow one. As well stated by Chief Justice Burger in Morrissey v. Brewer, supra, 408 U.S. at 489, 92 S.Ct. at 2604:

'We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.'

"Thus it is clear that at such hearings the defendant is not endowed with all of the rights which he possessed prior to conviction.

"It would appear that Farmer has trifled with the Court and has abused the confidence reposed in him by the District Judge when he was placed on probation on condition that he would not engage in illegal gambling activity. The fact is that he continued in the same illegal gambling activity in which he had been engaged prior to his conviction.

"It is significant that Farmer did not take the witness stand to deny that he had engaged in illegal activity while he was on probation.

"This case does not involve harassment by the police so that an exclusion rule should be invoked to prevent recurrence." United States v. Farmer, 512 F. 2d 160, 162 (6th Cir. 1975). cert. den.

*See also, United States* v. *Hill,* 447 F. 2d 817 (7th Cir. 1971) ;; *United States ex rel. Sperling* v. *Fitzpatrick,* 426 F. 2d 1161 (2nd Cir. 1970) ; cf. *United States* v. *Winsett,* 518 F. 2d 51 (9th Cir. 1975) ; *United States* v. *Vandemark,* 522 F. 2d 1019 (9th Cir. 1975).

As a reading of the above cases indicates, the courts have seized upon language in *Morrissey* that clearly distinguishes formal criminal proceedings and probation revocation hearings. Given this distinction the courts have found it unnecessary to fully apply the exclusionary rule when dealing with probation revocation. Rather, it appears that evidence seized illegally will be excluded only if it was seized as part of a continuing plan of police harassment or in a particularly offensive manner. We have not found a majority opinion which flatly accords full Fourth Amendment rights to a probationer.

At the state level, the various courts have, much like the federal courts, focused on the purpose for the exclusionary rule, and the conditional nature of the probationer's freedom. In *State* v. *Simms* (1974), Wash., 516 P. 2d 1088, at 1091, 1092, the court held:

> "In assessing the admissibility of the challenged evidence obtained as a result of the search discussed above, we note that at issue here is the admissibility of evidence in a new criminal proceeding against the defendant, rather than merely a proceeding to revoke his parole. This is significant since this court has previously held that the Fourth Amendment prohibition against the admission of illegally seized evidence is not applicable in a revocation of probation hearing. *State* v. *Kuhn,* 7 Wash. App. 190, 194, 499 P. 2d 49 (1972). In that case it was unnecessary for us to decide whether a warrantless search of a probationer's apartment was lawful or not, for we held that the Fourth Amendment exclusionary rule is not applicable in a probation revocation hearing, and thus, even if the entry was unlawful, the evidence was admissible.

> \* \* \*

> "In either case, [probation or parole] a holding that the exclusionary rule does not apply in revocation hearings is compelled by a consideration that although extension of the exclusionary rule to parole and probation revocation

hearings might have a desirable deterrent effect upon illegal official conduct, any such incremental deterrence is more than outweighed by the social consequences that would result from imposing such an impediment to blind the court or agency from relevant facts when it must make the delicate decision as to when a convicted person can be allowed to return to and remain in society. (Citations omitted.)

"The state has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if, in fact, the parolee has failed to abide by the conditions of his parole. For this reason the full panoply of rights due a defendant in a criminal proceeding does not apply to parole revocations. *Morrissey* v. *Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972).

"It is therefore clear that if this case involved only the question of whether the evidence obtained in the Cook residence was admissible in a parole revocation hearing, the issue would be resolved in favor of admissibility."

Further, in *State* v. *Caron* (1975), Me., 334 A. 2d 495, at 499, the court held that "suppression procedures" found in the criminal code were not available at a probation hearing. The court then went on to say:

"The further question remains whether the 'evidence-exclusionary' rule, as an independently operative remedy for violations of the Fourth Amendment to the Constitution of the United States made binding on the States by *Mapp* v. *Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961), has applicability to a hearing for revocation of a probation granted incident to the imposition, and suspension of the execution, of a sentence for guilt of crime (or for revocation of parole).

"The Courts, federal and state, which have considered the question have, with virtual unanimity, answered it in the negative. (Citations omitted.)

"The rationale of the decisions is that since the Federal Fourth Amendment 'evidence-exclusionary' rule is operative in any event in all 'criminal prosecutions', the additional furtherance of its policy objectives achieved by extending the rule to hearings for revocation of probation (or parole) is insufficient to justify the concomitant impairment of the proper functioning of the probation-parole system.

"We agree."

For similar holdings, *see, People* v. *Atencio* (1974), Colo., 525 P. 2d 461; *People* v. *Dowery* (1974), 20 Ill. App. 3d 738, 312 N.E.2d 682.

The extensive quotations above make a further lengthy discussion of the present issue unnecessary. We believe the relative merits of whether to extend the exclusionary rule to probation revocation hearings are adequately expressed in the various excerpts set forth above. We now hold that the exclusionary rule is not fully applicable in probation revocation hearings.

It is clear that probation gives both the defendant and society a second chance:

> "It is fundamental that probation should be granted only where the best interests of society and the individual are served. See IC 1971, 35-7-1-1, Ind. Ann. Stat. § 9-2209 (Burns Supp. 1973). In the exercise of its discretion, the trial court is required to balance the individual's rehabilitation needs with society's paramount interest in protection from future criminal behavior. (Citations omitted.) This tight-rope walk constitutes the essence of the trial court's determination of fitness for probation." *Ewing* v. *State, supra,* at 310 N.E.2d 577.

The second chance, however, carries greater risks for all involved, and a probationer is properly made subject to certain conditions which serve as guidelines both to him and the agency which supervises the probationer. Thus, sufficient proof that the conditions have been violated, whether or not such a violation amounts to an independent crime, serves to indicate to the court that the probationer presents an undue risk to society. This determination is not a finding of guilt—guilt has already been established. The sole question at a revocation hearing is whether the probationer should be allowed to remain conditionally free, given evidence of *repeated* antisocial acts, or be required to serve the previously imposed sentence in custody. Such a decision is difficult, and carries weighty consequences. We believe that such a decision should be made in light of all available evidence.

Although we find as we do, we are compelled to sound a note of warning. We do not here relegate probationers to second-class citizenship, nor sanction abusive police/probation officer conduct. This opinion is not an invitation to impose oppressive probation conditions, nor to conduct constant, meddling surveillance which unreasonably interferes with a probationer's privacy.[2] Our sole purpose in deciding this issue as we do is to insure that probation revocation decisions are prompt, complete and fair.

Therefore, assuming without deciding that the search warrant and subsequent search were improper, we nonetheless hold that the trial court did not err in failing to hold a preliminary "suppression" hearing or in failing to actually suppress the evidence introduced at the probation revocation hearing.[3]

## II.

Dulin next contends that it was error for the trial court to revoke his probation without adequate proof that a particular condition of probation had been violated. Dulin argues that in order for the court to revoke probation in reliance upon provision number nine (9), *supra,* it was necessary that he first be *convicted* of a criminal offense.

It is argued that provision number nine (9) is, in effect, a general requirement that Dulin "behave well." From this, Dulin draws support from *Gash, supra,* wherein our Supreme Court held:

> "If the revocation is for breach of the general condition of good behavior, there must have been a determination of guilt between the date of suspension and the date of the revocation hearing." 283 N.E.2d at 355.

---

2. Dulin does not allege he was harassed by police, and we find no evidence of such conduct.

3. By this holding we necessarily reject Dulin's contention, based on *Ewing, supra,* that evidence which would be inadmissible at a criminal proceeding is likewise inadmissible at a probation revocation hearing. While evidence which is admissible at trial would probably be admissible at a revocation hearing, this does not support Dulin's position, and we believe he has read *Ewing* too broadly.

In considering this issue, we must concede that trial courts are endowed with great power in deciding what conditions are necessary for a probationer. We do not therefore, removed as we are from the facts and emotions of the trial setting, seek to trifle with the determinations of the trial court in this regard. Yet, we feel constrained to speak out on this occasion.

In short, we find condition number nine (9) so vague as to be unreasonable. In *Gash, supra,* the Court stated "good behavior" in the sense of refraining from criminal activity was a condition of every probation. Then the court went on to say:

". . . that the court may, in addition thereto, impose other reasonable conditions. Such additional conditions, however, must be *specific* and specified in the order of suspension. Otherwise, there would be no means of subsequently determining whether or not they had been violated, and the power to revoke would be arbitrary, as it was under the 1907 Act, but changed by the Act of 1927." (Our emphasis.) 283 N.E.2d at 354.

We do not believe that the power granted the court by IC 1971, 35-7-2-1 (Burns Code Ed.) to "impose such conditions as it may deem best" overrides the above-stated requirement of specificity. The provision here in question leaves the probationer at the complete mercy of *everyone* who may have *any* reason, good or bad, to ever question his behavior. Further, if "anyone . . . think[s]" Dulin should be arrested or investigated the probation condition is violated because this suspicion indicates a "mental attitude of [dis]respect for the law. . . ."

In our opinion, the trial court leveled a shotgun blast at Dulin when a single shot would have sufficed. While we certainly agree that it is proper for any probationer to be subject to certain conditions, we also believe the probationer is entitled to provisions which establish definite restrictions during the probation period. The other conditions stand as evidence of the court's obvious ability to fashion more specific provisions, as they are clear and easily applied from both

sides of the bench. However, even though we consider condition number nine (9) to be so unreasonably vague as to be inapplicable, we find this is not grounds for reversal.

Whether or not the condition is one of "good behavior" as Dulin contends, and we do not decide that question, there is ample evidence to establish that Dulin violated provision four (4), *supra,* which required Dulin to refrain from the use of any unprescribed controlled substance. Our holding in Part I of this opinion indicates that the trial court properly considered the testimonial and physical evidence which clearly showed Dulin in, at least, constructive possession of marijuana.

Thus, while the revocation of probation may have been based on faulty grounds, the ultimate conclusion to revoke is supported by the record, and it would serve no purpose to remand this cause for further proceedings. Therefore, subject to the findings herein, the judgment of revocation is affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 346 N.E.2d 746.