David E. JOHNSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 778S139.

Supreme Court of Indiana.

June 20, 1979.

John D. Clouse and Michael C. Keating, Evansville, for appellant.

Theo. L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with and convicted of bank robbery, Ind.Code § 35–13–5–1 (Burns 1975), and sentenced to twenty (20) years imprisonment. On appeal he asserts the following as error:

(1) The trial court's denial of his motion to dismiss grounded on the State's alleged failure to use proper extradition procedures in returning the defendant to Indiana. .

(2) The State's failure to disclose to the jury certain considerations given to a chief witness in exchange for her testimony.

(3) The denial of the defendant's motion to suppress evidence seized in a search conducted without a warrant.

(4) The State's cross-examination of the defendant as to whether he had any evidence of his innocence.

(5) The trial court's refusal to allow the defendant to confer with a co-defendant prior to his decision as to whether to call him as a witness.

Prior to our discussion of the issues, let us first note that the defendant chose to proceed *pro se* and in doing so he took on the responsibility of insuring that any errors which may have occurred at trial were preserved for review. In several instances he requests that special consideration be given because he is not educated in matters of trial procedure and, therefore, should not be held to the same standard set for practicing attorneys. On the contrary, however, he was provided with court appointed counsel and voluntarily chose to proceed without such assistance. He cannot now be heard to complain that the lack of such assistance worked to his detriment. *Smith v. State* (1977) Ind., 368 N.E.2d 1154.

\*　　\*　　\*　　\*　　\*　　\*

### ISSUE I

Prior to the start of trial, the defendant filed a motion to dismiss alleging in part that the trial court lacked jurisdiction in the case due to his illegal arrest in Missouri and subsequent transportation to Indiana without formal extradition procedures or a waiver. The trial court denied his motion, which ruling he now assigns as error.

It has long been held that a trial court's jurisdiction is not affected by the impropriety of the method used to bring the defendant within its jurisdiction. *Frisbie v. Collins* (1952) 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; *Ker v. Illinois* (1886) 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421; *Massey v. State* (1978) Ind., 371 N.E.2d 703. In *Frisbie* the United States Supreme Court stated 342 U.S. at p. 522, 72 S.Ct. at pp. 511–512:

"This Court has never departed from the rule announced in *Ker v. Illinois*, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when

**1008**

one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accòrdance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will."

Although a defendant may not attack his conviction solely upon the basis that he was forcibly abducted from another State and brought to Indiana, he may challenge the admissibility of any evidence which was obtained as a result of such an arrest. *Massey v. State, supra*; *Mendez v. State* (1977) Ind., 367 N.E.2d 1081; *Williams v. State* (1973) 261 Ind. 385, 304 N.E.2d 311. Here, the defendant attempts to challenge the admissibility of his fingerprints on the basis that they were obtained as the result of his arrest. He has waived any review of this issue, however, inasmuch as he failed to make any objection to their admission at trial. *Ortiz v. State* (1976) 265 Ind. 549, 356 N.E.2d 1188; *Maldonado v. State* (1976) 265 Ind. 492, 355 N.E.2d 843. A defendant may not assert as error on appeal, matters which he has failed to bring to the trial court's attention.

## ISSUE II

Vicki Myers, a participant in the robbery with which the defendant was charged, was called as a chief witness for the State. During her testimony, she detailed the planning and execution of the robbery, naming the defendant as one of several involved. She was also questioned concerning the outcome of the charges which had been filed against her. She stated that she had been charged as a juvenile with bank robbery and that on conviction she was sentenced, as a delinquent, to the Indiana Girl's School. No mention was made of any agreement for special consideration to be given to her in exchange for her testimony.

The defendant contends that the State was under a duty to disclose any such arrangement made with Myers and as evidence that one did exist, he refers in his motion to correct errors to the certified transcript of testimony given by Myers at the trial of co-defendant Tillman Morris. That portion to which reference is made, consists of the following:

"Q. And didn't Mr. Turpin make a plea bargain, if you will, with the Prosecuting Attorney in your behalf that for your testimony against Mr. Morris here, you would not be waived to an adult court?

"A. No, he didn't.

"Q. He didn't what?

"A. He didn't make a plea bargain with me saying if I'd give my testimony that . . .

"Q. My question is, did Mr. Turpin, on your behalf, make such an arrangement with Jeffery Lantz, the Prosecuting Attorney?

"A. I don't think so.

 * * * * * *

"Q. Tell me now about what your understanding of the arrangements were, why you were being treated as a juvenile instead of being waived to an adult court?

"A. Because I gave State evidence.

"Q. Did Mr. Turpin tell you that if you admitted the petition alleging that you were a delinquent child that the State of Indiana would not ask that you be waived to an adult court and you could go to Girl's School?

"A. No, he did not.

"Q. Where do you get this understanding that if you testify, you wouldn't be waived? Who told you that?

"A. Didn't nobody tell me that

"Q. Do you recall me asking you about a waiver to adult court in your deposition?

"A. Yes.

"Q. And I asked you, was it dropped upon your agreement to testify in this case and you said, uh huh, I think so, is that correct?

"A. Uh huh."

Myers' attorney testified at the same trial concerning the alleged deal and stated:

"A. What it was is that in return for her full cooperation with the State of Indiana and federal authorities concerning this bank robbery, she would be treated as a juvenile and would not be waived to adult court."

Despite the fact that Myers testified that no "deal" had been made concerning her testimony, it appears from the preceding statements that some type of an agreement was struck between the State and Myers, whereby she would give State's evidence in exchange for being tried as a juvenile. The defendant argues that the State had an affirmative duty to disclose the details of that agreement to the jury, citing as authority, *Giglio v. United States* (1972) 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 and *Newman v. State* (1975) 263 Ind. 569, 334 N.E.2d 684. Each case upon which the defendant relies, however, differs in one major respect from the case at bar. In each instance neither the defendant nor his attorney had any positive proof that an agreement existed until after the trial had been completed. Rather, the issue was raised as newly discovered evidence. Here, however, the defendant does not contend that he has newly discovered evidence. He had the transcript of the testimony which Myers gave at the Tillman trial before him during his own trial, and he made reference to it on several occasions, indicating that he had read it. At no point did he raise any objection to the State's incomplete questioning of the witness as to the outcome of the charge filed against her, nor did he attempt to present evidence of the agreement himself, through cross-examination of the witness. We cannot allow a defendant to sit idly by and refrain from objecting to alleged error and then to raise it for the first time in his motion to correct errors. *Biggerstaff v. State* (1977) Ind., 361 N.E.2d 895. Defendant, during the trial, knew of the considerations given to the State's witness and had the opportunity to reveal it to the jury and elected not to avail himself of that opportunity. The issue, therefore, has not been properly raised.

## ISSUE III

The State offered into evidence Exhibits Nos. 16, 17, 17A and 18, which consisted of money wrappers, a sawed-off shotgun, three twelve gauge shotgun shells and nylon hose, all recovered in the search of an apartment at 800 Line Street, Evansville. The defendant moved to suppress these exhibits upon the grounds that they were seized pursuant to an illegal search, conducted without a warrant. Supporting his motion, the defendant relied upon the grounds set out in the motion to suppress filed on behalf of co-defendant Tillman Morris and the evidence presented in the subsequent hearing held on the motion.

Prior to reaching the merits of the defendant's argument that the search was illegal, let us note that a defendant has no constitutional right to challenge the search of another person's property. *Greer v. State* (1970) 253 Ind. 609, 255 N.E.2d 919. Inasmuch as there was testimony that the apartment was being rented to and occupied by Tillman Morris at the time of the search, the defendant has no standing to object to the search itself or to the admission of the fruits of the search. Thus, regardless of any illegality in the method in which the search was conducted, we find no error in the trial court's ruling.

## ISSUE IV

The defendant took the stand and testified in narrative form, after which he was cross-examined by the State. The following exchange took place:

"Mr. Johnson: . . . the only thing I can say in my defense is that the testimony that you have heard in relation to me being a part of this crime is not true. That's all.

"Court: That's the extent of your testimony?

"Mr. Johnson: Yea.

"Court: Mr. Tyler? The defendant has indicated that that is the extent of his testimony.

"Mr. Tyler: The State has no cross-examination. Except for one matter, your Honor. You're asking that this jury believe on your testimony only that you are not a participant and you did not participate in this robbery?

"Mr. Johnson: Yes.

"Mr. Tyler: And do you have any other evidence as to your innocence?

"Mr. Johnson: Yes.

"Mr. Tyler: And you're asking them to believe you?

"Mr. Johnson: I don't quite understand you.

"Mr. Tyler: You're asking the jury to believe your own statement?

"Mr. Johnson: Yes."

On appeal, the defendant argues that the State's questioning effectively shifted the burden of proof by creating an inference in the minds of the jury that it was his duty to come forth with evidence of his innocence. He concedes that no objection was made at trial and that the question was freely answered. He argues, however, that inasmuch as such questioning amounts to fundamental error, the trial court on its own initiative should have ordered the question and answer stricken, and admonished the jury to disregard them.

▮▮▮▮ Fundamental error is an exception to the general rule which requires an in-trial objection in order to preserve error for appeal. To fit within the exception, the error complained of must be such, that if not rectified, would deny the defendant "fundamental due process." *Malo v. State* (1977) Ind., 361 N.E.2d 1201; *Bobbitt v. State* (1977) Ind., 361 N.E.2d 1193. It is not enough that it relates in some manner to the violation of a constitutional right. In the instant case, the alleged error did not rise to such proportions. Thus, in the absence of a proper objection, which would have afforded the trial court an opportunity to remedy any prejudice which the defendant may have suffered, we decline to treat the issue.

## ISSUE V

Co-defendant Tillman Morris was called as a witness for the defense. Because he had not been previously named as a defense witness, he was questioned by the State outside the presence of the jury, prior to being interrogated by the defendant. At the conclusion of the State's questioning, the following exchange took place:

"Court: Once, again, for the record, Mr. Morris, and you're telling the Court that you wish to testify, correct?

"Mr. Johnson: Just a minute—just a minute—do you want to testify?

"Mr. Morris: No.

"Court: Sir?

"Mr. Morris: No. I don't want to testify.

"Court: And why aren't you going to testify.

"Mr. Morris: Because I don't want to—I changed my mind—I have a change of heart.

"Court: Fifth Amendment?

"Mr. Morris: No. I got the change of heart. I was going to testify, now—

"Court: You realize, Mr. Morris, he can call you.

"Mr. Morris: Who can call?

"Court: Mr. Johnson.

"Mr. Johnson: I do not wish to call him if he do not wish to testify.

"Court: Are you stating for the record now that you don't want him to testify? You are going to have to, Mr. Johnson, one way or another?

"Mr. Tyler: Your Honor, let me tell you, we need,—if he is going to testify we need at least a half an hour to verify his criminal record for the purposes of impeachment, and if he's not going to testify, I want to know now and I want Mr. Johnson to be bound by it.

"Court: I think, Mr. Tyler, if you'll just wait a second, we'll find out, all right. Now, Mr. Johnson, now, we've gone over this before and you have the right to call him if you desire. You have the right to call him.

(Discussion by Mr. Johnson and Court before the Bench)

"Mr. Johnson: He said he would like to have a half an hour, I'd like to have a half an hour to talk to Mr. Morris to see if he's willing to testify.

"Court: No. No. You can either call him or not and he can either testify or not. You can call him and if he doesn't want to testify, that's his right.

"Mr. Tyler: I'm not asking for a half an hour, I'm just asking that—

"Court: I'm not going to give you a half an hour—I want to find out right now whether he's going to testify or not. I just want to know if you're going to testify, that's all.

"Mr. Morris: No. I'm not going to testify.

"Court: All right. And you're not calling him, right, Mr. Johnson?

"Mr. Johnson: No.

"Mr. Tyler: All right, let's proceed.

"Court: All right. We're going to have a short recess so that we can get things arranged here."

The defendant contends that the trial court erred in denying his motion, citing several cases from other jurisdictions for the proposition that a defendant has a right to confer with potential witnesses. Such is not the case here, however. The defendant had had previous opportunities to confer with Morris and was simply requesting that he be given additional time during the trial to try to persuade Morris to testify.

 It is within the sound discretion of the trial court to determine whether or not to grant a motion for continuance other than one based upon statutory grounds. His decision will be set aside only where an abuse of that discretion can be shown. *Works v. State* (1977) Ind., 362 N.E.2d 144. We cannot say that the trial court abused its discretion in denying the defendant's motion.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.