Larry ALSPACH, Appellant-Defendant,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 4–1281A217.

Court of Appeals of Indiana,
Fourth District.

Oct. 6, 1982.

Charles H. Criss, Fern & Criss, Peru, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant-appellant Larry Alspach appeals the revocation of his probation and one year sentence to the Indiana Department of Correction less time spent in the Miami County Jail and at Life House.

Affirmed.

ISSUES

This appeal presents the following issues:

1. Must a probation officer give a probationer his *Miranda* warnings prior to custodial interrogation after a petition to revoke probation has been filed?

2. Is a discharge summary sheet of a halfway house a business record which is admissible into evidence as an exception to the hearsay rule?

3. Did the trial court err in allowing the probation officer to testify as to the length of time Alspach was to stay at Life House?

FACTS

The trial court found Alspach guilty of driving while intoxicated, leaving the scene of an accident, and improper tail lights, later sentencing him to the Indiana Department of Corrections for a period of one year. The sentence was suspended and Alspach placed on one year's probation. One of the probation department's rules required him to keep that department informed of his whereabouts at all times. Further, he was to receive treatment for his alcohol problem at a half-way house called Life House, he to remain there until completion of its program. Alspach also was ordered not to violate the law nor use drugs or alcohol while on probation.

Alspach entered Life House March 9, 1981, and was expelled seven days later for possession of marijuana. Mr. Clark, a Miami County Probation Officer, then filed a petition to revoke Alspach's probation. Alspach knew of its filing when he next visited Clark's office pursuant to its whereabouts advisory rule. During the visit Clark took Alspach to a conference room, shutting the doors to both exits. The room was approximately ten feet square and contained a telephone. Only Clark and Alspach were present. Clark did not tell Alspach he could leave if he wanted to, he was not offered the use of the telephone, and Clark did not read Alspach his *Miranda* rights. Clark asked Alspach why he had been kicked out of Life House. Alspach responded because he had marijuana in his possession.

Over objection, Clark testified to this admission at Alspach's revocation hearing. He further testified Alspach would have remained at Life House for one month to complete its rehabilitation program had he not been discharged. During the hearing, the trial court over objection admitted into evidence a discharge summary sheet of Life House without prior authenticating testimony from the custodial officer of that record.

DISCUSSION AND DECISION

I.

Alspach first argues the trial court erred in permitting Clark to testify as to his admission he was discharged because he had marijuana in his possession. Clark had not given Alspach his *Miranda* warnings before asking him what happened. Thus, such testimony should have been excluded.

This is a case of first impression in our state on this question.

The United States Supreme Court in *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 held prior to any in-custody *police* questioning, a suspect must be warned in clear and unequivocal terms:

1) he has a right to remain silent,

2) any statement he does make may be used as evidence against him in court,

3) he has a right to consult with, and have present prior to and during interrogation, an attorney, either retained or appointed, and

4) if he cannot afford an attorney, one will be appointed for him prior to any questioning, if he so desires. Failure to provide this warning renders any statement by the accused, or any evidence resulting from any such statement, inadmissible in a prosecution to determine guilt. However, the *Miranda* decision does not apply to statements given to persons who are not governmental agents or police officers. *Turner v. State,* (1980) Ind., 407 N.E.2d 235, 239; *Trinkle, Brown v. State,* (1972) 259 Ind. 114, 284 N.E.2d 816; *Leaver v. State,* (1968) 250 Ind. 523, 237 N.E.2d 368. Thus, we must determine whether a probation officer who is supervising a probationer acts as a govern-

mental agent or police officer when questioning the probationer.

## STATUS OF PROBATION OFFICER

■ The duties and powers of probation officers are defined by statute.[1] In this case probation officer Clark was discharging his duty under IC 11–13–1–3(5) to "supervise and assist" Alspach, a person on probation under the statutory power granted him by IC 11–13–1–5(1) to "confer with any person . . . under his supervision" when Alspach made his damaging admission.[2]

A review of a probation officer's statutory duties and powers shows his primary responsibility is to assist the court in probation matters. Thus, he acts as an arm of the court when so engaged, not as a governmental agent or police officer. As such, he is not required to give a probationer his *Miranda* warnings prior to interrogation. *Turner, Trinkle, Brown,* and *Leaver, supra.*

In *Dulin v. State,* (1976) 169 Ind.App. 211, 346 N.E.2d 746, police had searched a probationer's automobile under a search warrant (assumed for purposes of argument to be invalid) and found marijuana. One of the issues on appeal was whether the trial court was required to hold a suppression hearing or to suppress the evidence under the exclusionary rule at the revocation hearing because the probationer's Fourth Amendment rights had been violated. The *Dulin* court, by Lowdermilk, J. determined the Fourth Amendment exclusionary rule is not fully applicable in probation revocation hearings because of the unique nature of the probation process:

"It is clear that probation gives both the defendant and society a second chance:

'It is fundamental that probation should be granted only where the best interests of society and the individual are served. . . . In the exercise of its discretion, the trial court is required to balance the individual's rehabilitation needs with society's paramount interest in protection from future criminal behavior. (Citations omitted.) This tight-rope walk constitutes the essence of the trial court's determination of fitness for probation.'

1. IC 11–13–1–3 reads as follows:

Duties of probation officers.—A probation officer shall:

(1) Conduct prehearing and presentence investigations and prepare reports as required by law;

(2) Assist the courts in making pretrial release decisions;

(3) Assist the courts, prosecuting attorneys, and other law enforcement officials in making decisions regarding the diversion of charged individuals to appropriate noncriminal alternatives;

(4) Furnish each person placed on probation under his supervision a written statement of the conditions of his probation and instruct him regarding those conditions;

(5) Supervise and assist persons on probation consistent with conditions of probation imposed by the court;

(6) Bring to the court's attention any modification in the conditions of probation considered advisable;

(7) Notify the court when a violation of a condition of probation occurs;

(8) Cooperate with public and private agencies and other persons concerned with the treatment or welfare of persons on probation, and assist them in obtaining services from those agencies and persons;

(9) Keep accurate records of cases investigated by him and of all cases assigned to him by the court and make these records available to the court upon request;

(10) Collect and disburse money from persons under his supervision according to the order of the court, and keep accurate and complete accounts of those collections and disbursements;

(11) Assist the court in transferring supervision of a person on probation to a court in another jurisdiction; and

(12) Perform other duties required by law or as directed by the court.

IC 11–13–1–5 reads as follows:

Powers of probation officers.—A probation officer may:

(1) Visit and confer with any person under investigation or under his supervision;

(2) Exercise those powers necessary to carry out his duties; and

(3) Act as a parole officer for the department when requested by the department and when the request is approved by the court.

2. We are not here required to decide whether the status of a probation officer who visits and confers with a "person under investigation" under the authority of IC 11–13–1–5(1) prior to such person's trial and conviction changes to that of governmental agent or police officer so that he must give *Miranda* warnings prior to interrogation.

*Ewing v. State, supra,* at 310 N.E.2d 577.

The second chance, however, carries greater risks for all involved, and a probationer is properly made subject to certain conditions which serve as guidelines both to him and the agency which supervises the probationer. Thus, sufficient proof that the conditions have been violated, whether or not such a violation amounts to an independent crime, serves to indicate to the court that the probationer presents an undue risk to society. *This determination is not a finding of guilt—guilt has already been established.* The sole question at a revocation hearing is whether a probationer should be allowed to remain conditionally free, *given evidence of repeated antisocial acts,* or be required to serve the previously imposed sentence in custody. Such a decision is difficult, and carries weighty consequences. *We believe that such a decision should be made in light of all available evidence."* (Emphasis supplied.)

*Dulin,* 346 N.E.2d at 752–753. We also note Alspach knew the petition to revoke probation had been filed, and he was not under detention when Clark asked him why he had been kicked out of Life House. This was not the sort of incommunicado, police-dominated atmosphere of custodial interrogation and overbearing of the subject's will at which the *Miranda* rule was aimed, as the *People v. W.* court, *infra,* noted.

Under the circumstances Clark was acting as an assistant to the trial court. *Miranda* warnings were not required. The rule we here adopt is the general rule on the subject. *State v. Smith,* (1975), 112 Ariz. 416, 542 P.2d 1115; *Clark v. State,* (1969) Fla.App., 222 So.2d 766; *People v. W.,* (1969) N.Y., 249 N.E.2d 882; *State v. Johnson,* (1973), 9 Wash.App. 766, 514 P.2d 1073, 77 A.L.R.3d 669.

At this point, however, we believe Judge Lowdermilk's caveat in *Dulin* bears repeating:

"Although we find as we do, we are compelled to sound a note of warning. We do not here relegate probationers to second-class citizenship, nor sanction abusive police/probation officer conduct. This opinion is not an invitation to impose oppressive probation conditions, nor to conduct constant, meddling surveillance which unreasonably interferes with a probationer's privacy. Our sole purpose in deciding this issue as we do is to insure that probation revocation decisions are prompt, complete and fair."

*Dulin,* 346 N.E.2d at 753.

Because potential Fifth Amendment rights against self-incrimination are here involved, we believe Judge Lowdermilk's warning requires expansion for our purposes. Thus, we add to it: *Miranda* warnings need not be given by probation officers legitimately engaged in the supervision of probationers when

a) the probationer is not in custody,

b) the interrogation is reasonably related to the officer's duty to supervise the probationer, and,

c) the questioning is reasonable under all the circumstances, including the length of time and hour of the day or night it is conducted, the manner in which it is conducted, the persons present during questioning, and the place where it is conducted.

Mr. Clark's questioning of Alspach in this case was reasonable under all the circumstances. *Miranda* warnings were not required.

## II.

Alspach next argues the trial court erred in admitting State's Exhibit No. 1, a discharge summary sheet of the half-way house, because the preparer of the exhibit was not present in court for cross-examination, thus Alspach's right to confront witnesses under the Sixth Amendment and Art. I, ¶ 13 of the Indiana Constitution was violated. The exhibit's contents stated Alspach had been "expelled for possession and use of marijuana."

Although rules of hearsay and confrontation overlap, they are not equivalents. *California v. Greene,* (1970) 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489; *Smith v. State,*

(1980) Ind.App., 400 N.E.2d 1137, 1141. A defendant's right to confront witnesses is not violated by the admission of such evidence. The constitutional right to the confrontation of witnesses does not require that no hearsay evidence may be introduced at trial. *Dutton v. Evans,* (1970) 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213; *Collins v. State,* (1977), 267 Ind. 233, 369 N.E.2d 422, 423.

The admission of State's Exhibit No. 1 was not error.

### III.

Finally, Alspach argues it was error for the trial court to permit the probation officer to testify Alspach was to remain at Life House for a minimum period of thirty days.

Our review of the record indicates Mr. Clark testified without objection

"A. Okay, Larry was to enroll in Life House and the way the program is set up there, he would have to go there for at least thirty days..." (Tr., p. 62)

Alspach's objection after the voir dire following Clark's testimony on this subject was

"Your honor, we would object to any *further* questioning along this line, it might encompass hearsay." (Emphasis supplied.)

Tr., p. 64. No motion to strike the quoted testimony was made. Any objection to it was waived and cannot now be raised on appeal. *Wilson v. State,* (1982) Ind., 432 N.E.2d 30; *Foust v. State,* (1981) Ind., 428 N.E.2d 776; *Carlyle v. State,* (1981) Ind., 428 N.E.2d 10.

We find no error. Judgment affirmed.

YOUNG, P. J., and MILLER, J., concur.