James **HENDERSON**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 20S00–8612–CR–1069.

Supreme Court of Indiana.

Oct. 13, 1989.

June D. Oldham, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant James Henderson was convicted of Burglary, a Class B felony, for which he received a term of fifteen (15) years, and further, was found to have violated probation for a prior conviction for Forgery, a Class C felony, for which he received an executed term of five (5) years. His burglary term was ordered to be served consecutively to the five year term for violation of probation.

Six issues are presented for our review in this direct appeal:

1. error in the giving of final instruction seventeen;

2. impermissible remarks by the prosecutor during Henderson's case in chief;

3. impermissible comment by the prosecutor during final argument on Henderson's right not to testify;

4. insufficiency of the evidence;

5. admission of improper evidence during sentencing; and

6. improper procedure in revoking Henderson's probation status.

The evidence shows that at about 4:45 a.m. on March 2, 1985, victim Steve Kennedy, accompanied by his two brothers-in-law, returned to his apartment in Elkhart. They had left the apartment earlier the evening before, leaving Kennedy's wife alone in the apartment. When she went to bed, she unlocked the sliding glass door to the apartment so her husband and two brothers could get in. Mrs. Kennedy was asleep when her husband and two brothers returned to the apartment. As Steve Kennedy approached the apartment, he noticed the sliding glass door on the patio was open. He ran into the apartment and encountered Henderson in the living room. Henderson had Steve's new pair of tennis shoes under his arm and charged Steve, trying to get past him and out of the apartment. Henderson was known to play basketball as a hobby. A struggle ensued as Steve tried to stop Henderson from leaving the apartment and they fell to the floor. At this time, Steve's brothers-in-law came into the apartment and helped him subdue

Henderson. Henderson told them there was another man in the bedroom where Steve's wife was sleeping so the two brothers left Steve with Henderson and went to check on their sister's welfare. Henderson then escaped from Steve but was recaptured by the three outside the apartment and held until police arrived. After Henderson was apprehended, it was discovered that he had on his person a paring knife and a roll of adhesive tape. Henderson told police he had been grabbed as he walked past the apartment and dragged inside.

## I

■ The court's final instruction seventeen was on the subject of Henderson's intent. The language Henderson objects to in the instruction is as follows:

> ... you may infer that a person is presumed to intend the natural and probable acts, unless the circumstances are such to indicate the absence of such intent.
>
> When an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the state in the absence of justifying or excusing facts.

*Record,* at 126.

Henderson failed to object to this instruction in the trial court and failed to assert this claim of error in his motion to correct error. Therefore he has waived this issue. Ind.R.Tr.P. 51(C), 59; *Davis v. State* (1986), Ind., 493 N.E.2d 167.

Henderson claims the giving of this instruction amounted to fundamental error requiring us to review the issue in spite of the fact he failed to object to it at trial and assert it in his motion to correct error. In *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, the United States Supreme Court held it was impermissible to instruct a jury that the law presumes a person intends the ordinary consequences of his voluntary acts, because the instruction may have the effect of impermissibly shifting the burden of proof to the defendant. However, language nearly identical to the present instruction was approved by this Court in

*Jacks v. State* (1979), 271 Ind. 611, 623–26, 394 N.E.2d 166, 174–76. Like the instruction in *Jacks*, this instruction is not a mandatory one but advises the jury they may infer intent from certain proved acts of the defendant and does not tell them the law presumes that intent. No fundamental error is shown meriting reversal. *Jacks, supra; see also Pitman v. State* (1982), Ind., 436 N.E.2d 74, 77 (evidence of victims' injuries relevant to prove intent in robbery conviction).

## II

■ During the direct examination of defense witness Vickie Johnson, the prosecutor, while making an objection to the testimony, inferred that Henderson had a responsibility to respond to the State's questions. Henderson claims this was an impermissible comment on the defendant's right not to testify. Vickie Johnson was answering a series of questions about Henderson. Among those questions were the following:

Q. Did you know anything about James being in the Service?

A. Yeah.

Q. How long was he in the Service?

A. I'm not quite sure how long he was in, but he's talked about it quite a bit.

Q. Did he tell you what he did when he was in the Service?

MR. WICKS: I'm going to object to that as being hearsay, Your Honor. We should hear from the defendant on that point.

*Record,* at 338.

Henderson made no objection at the time the remark was made nor did he ask for any relief from the court regarding it. Furthermore, Henderson did not raise this issue in his motion to correct error. He raises it in this direct appeal, claiming it was fundamental error and should be reviewed by this Court even though he has waived it by not raising it at trial and in his motion to correct error.

We do not find this remark denied Henderson of fundamental due process or

his right to a fair trial to the extent it presents fundamental error. Although it did indicate the answer to the question would have to come from Henderson, it merely stated that the testimony would be hearsay as to this witness as Henderson is the only one who could speak on it directly. It involved a subject that had nothing to do with Henderson's guilt or innocence or the facts and circumstances of this case. It referred only to background material about Henderson's activities while in the armed forces. Fundamental error is that which, if not rectified, would deny a defendant fundamental due process. When the record reveals clearly blatant violations of basic and elementary principles and the harm or potential for harm could not be denied, this Court will review an issue not properly raised and preserved. *Frith v. State* (1983), Ind., 452 N.E.2d 930; *Warriner v. State* (1982), Ind., 435 N.E.2d 562, 563; *Johnson v. State* (1979), 271 Ind. 145, 151, 390 N.E.2d 1005, 1010, *cert. denied* (1979), 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312. Fundamental error is not apparent here.

### III

■ The evidence disclosed that when Henderson was apprehended in the Kennedy's apartment, he had in his pocket a paring knife and a roll of adhesive tape. Further, the evidence showed that the tennis shoes in question were beside Mrs. Kennedy's bed while she slept. She testified they were there when she went to bed and that she stumbled over them when she got up during the night to go to the bathroom. They were next seen in Henderson's possession as he approached the open patio door. During closing argument, the prosecuting attorney made reference to these items, commenting on what reasons Henderson might have had for having these items in his possession. There was also a towel in the jacket pocket. The prosecuting attorney asked the jury why a person breaking into an apartment would want a knife, tape, and a towel. He then stated that perhaps the knife would be used as a weapon to defend himself, the tape to tape the victim's mouth if she cried out, and the towel to wipe off fingerprints.

In his rebuttal, the prosecuting attorney commented that there was no way of knowing exactly what led him to that apartment but surmised he might have been attracted to Mrs. Kennedy. Henderson characterized these statements as being comments on facts not in evidence and inferring Henderson was about to commit offenses other than the offense charged. On the contrary, the comments referred to inferences that might be drawn from facts in evidence. They were not comments on facts not in evidence nor did they infer that the prosecuting attorney had personal knowledge of Henderson's guilt not within the knowledge of the jury. Moreover, Henderson again failed to object or ask for any relief from the trial court at the time these statements were made and failed to raise the argument in his motion to correct error. Henderson accordingly has waived the issue. Ind.R.Tr.P. 59; *Frith, supra.*

### IV

■ Henderson claims there was insufficient evidence to support his conviction for burglary because there was not substantial evidence of probative value that he intended to commit the crime of theft when he entered the apartment. He concedes our standard for reviewing sufficiency claims provides we do not weigh evidence or judge credibility but consider only that evidence most favorable to the State together with all reasonable and logical inferences to be drawn therefrom. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672.

Henderson concedes he was improperly in the apartment and the evidence supports the conclusion that he broke and entered into it. His only claim of insufficiency is that there is no showing he intended to commit the crime of theft. His contention is not supported by the evidence. Steve Kennedy testified that as he came through the patio door he saw Henderson in possession of his tennis shoes, heading toward the door and, in fact, Henderson tried to get around Kennedy and leave with the shoes. This was sufficient evidence of probative value for the jury to find or infer that Henderson was taking the shoes with him,

that he was thereby committing the crime of theft and that he broke and entered the apartment with the intent to do so.

## V

■ Henderson claims the trial court violated the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution because the court relied on inaccurate information alleging other crimes that were not proven in sentencing Henderson.

When Henderson was apprehended in the commission of the instant crime, he had in his possession a knife and a roll of adhesive tape. The presentence report revealed Henderson's past criminal history in which he had committed sexual assaults against women, including rape, where he used a knife and tape during the assaults. Some of the accounts involved cases where he was convicted of sexual crimes against women and some where there was evidence of those activities but he was not tried or convicted for them. At the sentencing hearing, defense counsel objected to the mention of these incidents in the presentence report since there was no evidence that Henderson had in any way sexually assaulted Mrs. Kennedy in the commission of this burglary. In the State's argument during sentencing, the prosecutor noted among other things that in 1981 Henderson filed a clemency petition in which he admitted binding and threatening two women. He was convicted of forgery and criminal confinement. The prosecutor indicated he had a statement in which Henderson admitted to a rape in 1977 for which he was never prosecuted. He stated Henderson's criminal confinement conviction involved taping his victims or the victims escaped before anything further happened to them. The prosecutor also commented on other defenses that Henderson raised, including his contention that he was investigating a prowler in the area and happened to be in the neighborhood and in the Kennedys' apartment. The prosecutor suggested since Henderson was found with a knife and tape in his possession, the court could consider this as a sentencing factor and recommended that the court give an aggra-

vated term of twenty (20) years for the burglary conviction. The trial court aggravated the presumptive ten year term for burglary, a Class B felony, from ten (10) years to fifteen (15) years. He found several aggravating factors that he articulated in his order. Those were: Henderson had accumulated three felony convictions, had been on parole, had committed the instant offense while on probation for a prior conviction and that having committed a felony and having been placed on parole and probation, had failed to be deterred from further criminal activities. The court further found there was evidence Henderson committed the acts intending the victim should suffer some harm. He then further found that it is unlikely a short term of incarceration would be of any benefit and imposition of the standard presumptive sentence would depreciate the seriousness of the offense. The court stated that for each of these reasons it found aggravating factors and sentenced Henderson to a term of fifteen (15) years.

Henderson objects to the aggravating factor noted by the court that Henderson committed the acts intending the victim should suffer some harm. In making such finding and imposing its sentence, the trial court relied, Henderson contends, on materially untrue assumptions as there was no evidence he intended or attempted any sexual assault on Mrs. Kennedy. Henderson is correct that the courts have sustained due process objections to sentences imposed on the basis of misinformation of constitutional magnitude. In *United States v. Weston* (9th Cir.1971), 448 F.2d 626, 628–34, *cert. denied* (1972), 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749, the court vacated a sentence that was based on unproven government allegations which were denied by the defendant and not supported by reliable evidence. The defendant was accused of being the chief supplier of heroin to the Western Washington area. The court relied on this information in imposing the maximum sentence. The reviewing court vacated the sentence and directed the trial court not to rely on unverified information in sentencing. The same

was true in *United States v. Lemon* (D.C. Cir.1983), 723 F.2d 922, where the defendant was sentenced on the basis of unverified information that defendant was a member of a radical religious group involved in criminal activities and that defendant had committed various crimes for the benefit of that organization. These charges were found to be unverified.

However, in *Gardner v. State* (1979), 270 Ind. 627, 637–38, 388 N.E.2d 513, 519–20, this Court acknowledged this principle but found that the presumption of innocence does not extend to the sentencing proceeding. The sentencing judge is permitted to consider prior convictions, prior criminal activity not resulting in charges or convictions, and even prior acquittals. For example, it was held proper for a sentencing court to consider past convictions for selling whisky in imposing a sentence for possession of a firearm as a convicted felon. *United States v. Jones* (6th Cir.1976), 533 F.2d 1387, 1393–94, *cert. denied* (1977), 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059. Use of unproved criminal activity in sentencing does not violate the presumption of innocence and a judge may even properly consider counts in an unprosecuted indictment. *United States v. Doyle* (2d Cir. 1965), 348 F.2d 715, 720–22, *cert. denied* (1965), 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84.

The trial court in the instant case had ample reason considering the defendant's past record to take the presence of the knife and tape into consideration in arriving at a fair sentence. Additionally, the court gave several other valid grounds for aggravation, all of which were supported by the evidence. The trial court properly and adequately supported his judgment that the sentence be aggravated for an additional term of five (5) years.

## VI

Henderson had previously been convicted of forgery and sentenced to a term of five (5) years. The trial court suspended the sentence and placed Henderson on probation for a period of five (5) years.

The State filed a petition to revoke probation on the basis of Henderson's involvement in the instant burglary charge. The hearing on the petition to revoke was set for the same day Henderson was to be sentenced for the instant burglary conviction. The trial court sentenced Henderson on the instant case and then proceeded into the hearing on revocation of probation. Henderson requested a continuance to determine whether he was subject to revocation of probation and the court granted the continuance. At a subsequent hearing, the trial court found that the burglary of a dwelling conviction in the instant case constituted a violation of Henderson's probation and accordingly revoked Henderson's suspended sentence and probation and ordered that he serve the five (5) years consecutively to the sentence imposed for the burglary conviction.

Henderson's objections are that he was not given a sufficient hearing and claims there was insufficient evidence to revoke his probation because no proof was made of the crime alleged to have constituted the violation of his probation, no proof was made of the original condition and the terms of probation imposed as a result of that conviction. On a similar set of facts the Third District Court of Appeals in *Szymenski v. State* (1986), Ind.App., 500 N.E.2d 213, 215, found that a revocation hearing is in the nature of a civil action (citing *Shumaker v. State* (1982), Ind.App., 431 N.E.2d 862, 863). Therefore, the State's burden is that of preponderance of the evidence and not the criminal burden of beyond a reasonable doubt. Since conditions of probation are imposed by courts, not the legislature, the determination that those conditions have been breached is not an adjudication of guilt. That finding had already been made at the initial hearing. The *Szymenski* court continued:

> Consequently, the defendant at such hearings is not endowed with all the rights he possessed prior to his conviction. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. For example, this state has held that the exclusionary rule is not fully applicable in probation revocation hearings. *Dulin*

*v. State* (1976), 169 Ind.App. 211, 219, 346 N.E.2d 746, 752. Evidence seized illegally will be excluded from a revocation hearing only if it was seized as part of a continuing plan of police harassment or in a particularly offensive manner. *Id.*, 346 N.E.2d at 751.

Similarly, while it is widely recognized that a trial court may not take judicial notice of its own records in another case previously before the court even on a related subject with related parties, *Freson v. Combs* (1982), Ind.App., 433 N.E.2d 55, 59, this rule should not be fully applicable in probation revocation hearings. Given the nature of a revocation proceeding, to require technical procedural and evidentiary rules similar to those required at the pretrial and trial phases of our criminal justice system would unduly burden revocation proceedings. *See Dulin*, 346 N.E.2d at 750. Formal proof of the original conviction and the conditions of probation is not required.

*Szymenski*, 500 N.E.2d at 215.

The burglary conviction provided grounds supporting the trial court in its finding that Henderson had violated his probation. His order revoking that probation and ordering that the sentence be served was not error.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, dissenting.

In this case, appellant Henderson was charged with knowingly breaking and entering a dwelling with the intent to steal. When the court instructed the jury in the last sentence of its state-of-mind instruction that "[w]hen an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the state in the absence of justifying or excusing facts," it impermissibly shifted the burden of proof to the defense on the issue of whether there was an intent to steal. This was fundamental error and, in light of the minimal proof of intent to steal, not harmless beyond a reasonable doubt. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The instruction impacted differently here than it did in *Jacks v. State* (1979), 271 Ind. 611, 394 N.E.2d 166, where the charge was murder and there was a single criminal state of mind at issue. Here there were two such states of mind, namely one involving a knowing breaking and entering and one involving an intent to steal. The instruction told the jury that, in the absence of some proof of justification or excuse by the defense, once it had inferred that an unlawful act of breaking and entering had been knowingly accomplished, it need not go on and determine whether the breaking and entering had been accomplished contemporaneously with an intent to steal. This was error.

DICKSON, J., concurs.