**Darrell CRABTREE, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 883S289.**

Supreme Court of Indiana.

Nov. 19, 1984.

**726**

J.J. Paul, III, James H. Voyles, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Charyl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Darrell Crabtree, was convicted by a jury of robbery, a Class A felony, Ind. Code § 35–42–5–1 (Burns 1984 Supp.) and confinement, a Class B felony, Ind. Code § 35–42–3–3 (Burns 1984 Supp.) and was sentenced to the Indiana Department of Correction for concurrent terms of thirty and ten years. In this direct appeal defendant raises the following two issues:

1. Whether there was sufficient evidence on the elements of the two offenses to support the verdicts of the jury; and

2. Whether the trial court erred in denying defendant's motion for a continuance when he was unable to locate one of his witnesses.

A brief summary of the facts from the record most favorable to the state shows that on December 12, 1982, the victim, Charles Epstein, received a telephone call from an acquaintance, Phyllis Hewitt, asking if he wanted to purchase some drugs from her. Arrangements were finally made for Hewitt to bring some drugs to Epstein's house. Later that night, Hewitt and two white males came to Epstein's house and sat down in his living room. All four parties smoked a marijuana cigarette. Epstein identified the defendant as being the taller of the two men with Hewitt. The shorter man was identified as Billy Griffin. Epstein received two injections of a drug that was allegedly Desoxyn but said he felt none of the drug's usual effects. He found that some marijuana he had left in his coat pocket was missing and became afraid that the two men with Hewitt were going to rob him.

Epstein went into the dining room and called his landlord who lived in the other half of the double. He told him loudly that he needed the lock on his front door fixed. He then whispered to him to get dressed and come over because he was afraid of the woman and two men who were in his house. When Epstein returned to the living room, Griffin pulled out a black revolver, pointed it at Epstein's stomach and said he thought Epstein had called the police. Then Griffin hit Epstein over the head with the butt of the gun, knocked him down and asked him for money. Epstein gave him the money which was in his wallet, and also gave him a small bag of marijuana. Griffin then motioned for Epstein to go into the dining room and lie down on the floor. He jerked a cord out of a lamp and handed it to defendant who had also come into the dining room. Defendant wrapped the cord around Epstein's ankles. Griffin's gun went off and a bullet struck Epstein in the right ankle. Then both men and Hewitt, who had remained in the living room, left the house. Defendant testified in his own behalf and said he had not gone into the dining room and did not wrap the cord around Epstein's legs.

## I.

■ Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *McNary v. State* (1984) Ind., 460 N.E.2d 145; *Tunstall v. State* (1983) Ind., 451 N.E.2d 1077; *Fielden v. State* (1982) Ind., 437 N.E.2d 986.

■ Here, the record shows that defendant's accomplice testified for the state and essentially corroborated the victim's story about the sequence of events, although there was some conflict about who was actually holding the gun and who had wrapped the cord around the victim's legs. It is clear that Epstein was robbed at gunpoint, was forced to lie down on the floor with an electric cord wrapped around his legs, and was seriously injured by a shot from the gun one of his attackers was holding. His injury required him to be hospitalized for several days and to have continuing medical treatment for some time. There was testimony that before Hewitt, defendant and Griffin went to Epstein's home Hewitt told the two men that she knew someone "we could easily take some pot from." This evidence was sufficient to support all the elements of robbery as a Class A felony and confinement as a Class B felony. It also showed that there was a common scheme or plan to rob Epstein.

■ Our law is firmly established that an accomplice is criminally liable for the acts done by his confederates which were a probable and natural consequence of their common plan. An accomplice need not act out each element of an offense as the acts of one accomplice are imputed to all. *Reynolds v. State* (1984) Ind., 460 N.E.2d 506; *Wilson v. State* (1983) Ind., 455 N.E.2d 1120; *Harris v. State* (1981) Ind., 425 N.E.2d 154. Although defendant may

not have actually pulled the trigger of the gun or wrapped the cord around the victim's ankles, he was clearly a willing participant in the plan to rob Epstein and the evidence was sufficient to sustain his convictions.

■ Defendant also alleges that the electrical cord was wrapped so loosely around Epstein's legs that it did not substantially interfere with his liberty. He points out that Epstein was able to get up, slip the cord apart and then shake it loose by himself after his attackers left. We do not agree with defendant's contention. Confinement is defined as the knowing or intentional interference with another person's freedom of movement without their consent. Ind. Code § 35–42–3–3 (Burns 1984 Supp.). We have consistently held that the fact that a victim is able to break away from the confinement does not negate the determining factor that a jury could find, beyond a reasonable doubt, that a nonconsensual confinement took place. *Spivey v. State* (1982) Ind., 436 N.E.2d 61. Since there was sufficient evidence on all the elements of the charged offenses to support the jury's determination, the verdicts were not contrary to law.

## II.

Defendant finally contends that the trial court erred in denying his motion for a continuance to allow him to locate Phyllis Hewitt who was listed as a state's witness. The record shows that defendant first moved for the continuance about three days prior to the scheduled trial date when he determined that the state was not going to call Hewitt as a witness and did not know her current address. He tried to locate Hewitt during those three days and did contact her mother. Hewitt was in the Indianapolis area but allegedly had been threatened by the police that she would be charged with the crime herself if she showed up for the trial.

Defendant renewed his motion for a continuance on the morning of the trial and stated that he still had not been able to

locate her. The court heard testimony from the investigating police officer who stated that he had talked to Hewitt several times but did not have a written statement from her. He also testified that he did not know Hewitt's current address and that she was in hiding because of threats made to her by defendant's brother and another friend. The court then denied defendant's motion for a continuance.

It is well settled that a motion for continuance based upon non-statutory grounds is addressed to the discretion of the trial court. A denial of continuance will be set aside only where an abuse of that discretion can be shown. *Whitacre v. State* (1980) 274 Ind. 554, 412 N.E.2d 1202; *Johnson v. State* (1979) 271 Ind. 145, 390 N.E.2d 1005. Here defendant could not show that Hewitt's testimony would substantially help his case and defendant had ample time before trial in which to subpoena her if he felt she would aid his defense. We cannot say that the trial court abused its discretion in denying defendant's motion.

For all of the foregoing reasons there was no trial court error and the judgment of the court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.