**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARY SPEARS**
Gilroy Kammen Maryan & Moudy
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DWAYNE GAINES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1201-CR-12 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
Cause No. 49F15-1101-FD-3883

**July 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Dwayne Gaines appeals two of his three convictions for Class D felony criminal confinement and Class C misdemeanor indecent exposure. He contends that there is insufficient evidence to sustain those convictions. We find that there is sufficient evidence to sustain his criminal confinement conviction but insufficient evidence to sustain his indecent exposure conviction. We therefore affirm in part, reverse in part, and remand with instructions to vacate Gaines' indecent exposure conviction.

**Facts and Procedural History**

The evidence most favorable to the judgment is that on October 23, 2010, Gaines asked his co-worker, S.H., for a ride home from work since they were both leaving at the same time. Gaines asked S.H. on the ride home if they could stop at the liquor store. S.H. initially declined because she had to go home to let her dog out, but she eventually agreed because she was planning on having company over the next day and needed to stop at the liquor store, too. After stopping at the liquor store, Gaines began to drink his beer, and they drove to Gaines' apartment at Microtel Inn & Suites.

When they arrived at Gaines' apartment, S.H. took a shot of Jägermeister, and they both went inside so S.H. could use the restroom. Then, they both returned to S.H.'s car. Gaines got into S.H.'s car and continued drinking, even though he had not been invited to do so. Tr. p. 12. When S.H. told Gaines he needed to leave, he started to get out of the car. However, he stopped, turned around, said, "Hell, naw [sic]," and shut the door. *Id.* At this point, S.H. testified that she did not feel free to leave her car. *Id.*

2

Gaines then said "I'm not goin' any motherf***in' where, I need to be f***ed." *Id.* S.H. asked Gaines to leave her vehicle, but he just repeated himself and grabbed her elbow, which S.H. described as feeling "confining." *Id.* at 13. S.H. testified that during this time she did not feel like she could leave her car; although she claims she tried to leave, she said that she "couldn't with him in the car." *Id.* at 12. Gaines also licked S.H.'s neck and told her to drive the car. S.H. drove around the parking lot and again asked Gaines to leave. He grabbed her elbow and again repeated, "I'm not going any motherf***in' where, I need to be f***ed." *Id.* at 15.

After repeating himself for the third time, Gains told S.H. to "look" and showed her his exposed penis. *Id.* He again told her to drive. S.H. testified that this also made her continue to feel that she could not just turn off her car and leave. *Id.* After S.H. made a few more requests that Gaines leave the car, he finally did without incident. This entire event lasted somewhere between two and four hours.

S.H. did not call the police that night, instead calling them the next afternoon, October 24. S.H. spoke with Indianapolis Metropolitan Police Department Officer Michael Wright, who testified that S.H. still appeared to be upset about the incident. *Id.* at 29. Indianapolis Metropolitan Police Department Detective Tiffany Woods also spoke with S.H. on both October 25 and 27 and testified that she was still "upset and nervous . . . and distraught." *Id.* at 47 (ellipses in original).

The State charged Gaines with Class D felony criminal confinement, Class B misdemeanor battery, and Class C misdemeanor indecent exposure. A bench trial was held. Notably, before delivering the judgment, the trial court noted that the State had

3

argued that the indecent exposure occurred in a public place – a parking lot – and that was inconsistent with the charging information. *Id.* at 80. Regardless, Gaines was found guilty as charged. His sentences were to run concurrently for an aggregate sentence of 730 days, with 90 days executed at the Indiana Department of Correction and the remainder to be served on home detention.

Gaines now appeals.

## Discussion and Decision

Gaines raises two issues on appeal: (1) whether there is sufficient evidence to support his Class D felony criminal confinement conviction and (2) whether there is sufficient evidence to support his Class C misdemeanor indecent exposure conviction. He does not challenge his conviction for Class B misdemeanor battery.

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. We consider only the evidence most favorable to the judgment and the reasonable inferences draw therefrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

## I. Criminal Confinement

Gaines was convicted of Class D felony criminal confinement, which is governed by Indiana Code section 35-42-3-3 and provides in relevant part:

(a)  A person who knowingly or intentionally:
    (1) confines another person without the other person's consent; . . .
commits criminal confinement. . . . a Class D felony.

He contends that there is insufficient evidence that he prevented S.H. from leaving her car.  We disagree.

During the incident, Gaines conveyed to S.H. that she was not free to leave the car and that he wanted sex.  Tr. p. 79.  Additionally, "[a]ny amount of force can cause a confinement because force, however brief, equals confinement."  *Harvey v. State*, 719 N.E.2d 406, 411 (Ind. Ct. App. 1999) (citing *Wethington v. State*, 560 N.E.2d 496, 508 (Ind. 1990)).  The uncontested evidence presented at trial shows that Gaines grabbed S.H.'s elbow two different times when she asked him to leave her car; S.H. testified that this action by Gaines felt "confining" and that she did not feel that she could leave her car. Tr. p. 13.  This force, though brief, is sufficient to constitute confinement.

Gaines also argues that because S.H. was physically able to leave the car, she was not confined.  However, "[w]e have consistently held that the fact that a victim is able to break away from the confinement does not negate the determining factor that a jury could find, beyond a reasonable doubt, that a nonconsensual confinement took place." *Crabtree v. State*, 470 N.E.2d 725, 727 (Ind. 1984).  Therefore, it does not matter that S.H. could have left her car; the trial court still could reasonably find that she was subject to a nonconsensual confinement.

The evidence presented at trial is sufficient to support Gaines' Class D felony criminal confinement conviction.

**II. Indecent Exposure**

5

Gaines also contends that there is insufficient evidence to support his Class C misdemeanor indecent exposure conviction. We agree.

Indecent exposure is governed by Indiana Code section 35-45-4-1, which provides in relevant part:

> (e) A person who, in a place other than a public place, with the intent to be seen by persons other than invitees and occupants of that place:
>
>                \*      \*      \*      \*      \*
>
>     (3) fondles the person's genitals or the genitals of another person; or
>     (4) appears in a state of nudity;
> where the person can be seen by persons other than invitees and occupants of that place commits indecent exposure, a Class C misdemeanor.

The evidence adduced at trial shows that Gaines exposed himself in S.H.'s car and told her to "look," showing an intent that *she* see him in his state of nudity. Tr. p. 15. But, S.H. was an occupant of the car. While it may have been possible that others in the parking lot could have seen him, the State presented no evidence at trial that Gaines intended that anyone other than S.H. see him in his state of nudity. The evidence is therefore insufficient to support Gaines' Class C misdemeanor indecent exposure conviction.

Alternatively, the State could have charged Gaines with Class A misdemeanor public indecency. Indeed, the State argued that Gaines was guilty of public indecency although they did not charge him as such or amend the charging information to reflect the offense of public indecency. *See id.* at 80.

Public indecency is also governed by Indiana Code section 35-45-4-1, which provides in relevant part:

> (a) A person who knowingly or intentionally, in a public place:

6

\* \* \* \* \*

> (3) appears in a state of nudity with the intent to arouse the sexual desires of the person or another person; or
> (4) fondles the person's genitals or the genitals of another person;

commits public indecency, a Class A misdemeanor.

The evidence presented at trial shows that Gaines intentionally appeared in a state of nudity with the intent to arouse the sexual desires of both him and S.H. The State also argued, and the trial court found, that the Microtel Inn & Suites parking lot is a public place. Tr. p. 80. So, had the State charged Gaines with Class A misdemeanor public indecency, the evidence would have been sufficient to support that conviction. However, the State chose to charge Gaines with Class C misdemeanor indecent exposure instead, and there is insufficient evidence to uphold that conviction. The trial court is therefore instructed to vacate this conviction.

Affirmed in part, reversed in part, and remanded with instructions.

CRONE, J., and BRADFORD, J., concur.

7