

IN THE

# Court of Appeals of Indiana

Shawn Laver Perry,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Apr 08 2025, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

April 8, 2025

Court of Appeals Case No.
24A-CR-1624

Appeal from the Lake Superior Court

The Honorable Gina L. Jones, Judge

Trial Court Cause No.
45G03-1907-F5-320

---

**Opinion by Judge Weissmann**
Judges May and Scheele concur.

**Weissmann, Judge.**

[1] Shawn Perry dragged his girlfriend by the neck into their bedroom, pulled out a firearm, and threatened to kill her and her children. For this, Perry was convicted of criminal confinement and other felonies. On appeal, Perry claims insufficient evidence supports his confinement conviction because the State allegedly relied on the same evidence used to support his other convictions, and because his girlfriend eventually left the bedroom. Perry also challenges his abstract of judgment, which fails to properly reflect the court's ruling. We affirm his conviction but remand for correction of the abstract.

## Facts

[2] In July 2019, Perry was living with his girlfriend, Deshonda Lewis, their four-month-old son (Baby), and Lewis's two other young children: a fourteen-year-old daughter (Daughter) and a nine-year-old son (Son). Lewis also had an adult daughter, Shonterrance James, who lived elsewhere.

[3] Perry and Lewis had a volatile relationship. In fact, three years after the events that formed the basis for this case, Perry was charged with Lewis's murder. App. Vol. III, p. 96; Tr. Vol. III, p. 197. Those charges are currently pending.

[4] On July 19, 2019, James was eight months pregnant and spent the night at Lewis's home in advance of her baby shower the following day. Lewis, James, and the three young children spent the evening shopping for the party. When they returned home, they discovered they were locked out of the house and that Lewis's car was gone. After several calls, Perry eventually returned home and

let them in. Perry remained agitated that evening and Lewis attempted to calm him down.

[5] Later that night, around 2:00 a.m., Perry and Lewis began arguing loudly outside the home. James and Daughter both woke up from the commotion and saw Perry push Lewis into the house. Perry was acting "really aggressive and loud." Tr. Vol. II, p. 184. Once inside, Lewis took Daughter, Son, and James into Daughter's bedroom and locked the door behind her. Baby remained asleep in Lewis and Perry's bedroom.

[6] As Perry and Lewis continued to argue through the door of Daughter's bedroom, Lewis told Daughter to call 911. Perry then kicked the door down, "pointed at [Daughter] and told [her] to hang up the phone." Tr. Vol. III, p. 125. At this point, the children were screaming and "hysterical." Tr. Vol. II, p. 188. Still on the line with the 911 operator, Daughter said, "My mom's boyfriend is threatening us." Exh. 14 (2:55-58). In the background, a male voice is heard saying, "Stop, stop, hang up." *Id.* (2:58-3:00). But Daughter stayed on the line as the argument continued.

[7] Daughter told the 911 operator that Lewis and James were trying to get Baby, but Perry "won't let [them]." *Id.* (6:30-32). Then, Daughter shrieked and said, "He's coming for me, he knows I'm on the phone with you." *Id.* (9:48-51). When the operator told her to lock herself in a room, Daughter responded, "He broke my door, I can't lock it." *Id.* (10:16-18). Daughter remained in the bedroom on the phone with 911 as the operator tried to calm her down.

[8] Meanwhile, James had followed Lewis and Perry into the living room where the confrontation continued. James heard Perry say "this wasn't going to end well" and "he didn't mean for it to get this far." Tr. Vol. II, p. 190. James then witnessed Perry grab Lewis "by the neck," choke her with his arm, drag her into the couple's bedroom, and throw her on the bed. *Id.*

[9] As James approached the bedroom to help her mother, Perry said, "Since you guys want to play, I'm going to show you all how to play since you all always want to play with me." *Id.* at 193. Before James could enter the room, Perry "pulled a gun from right behind the door threshold" and pointed it at James. *Id.* With Lewis in the room behind Perry, Perry told James "to get the f**k out of here." Tr. Vol. III, p. 70. James ran into Daughter's room, "terrified" and screaming that "[Perry] has a gun." *Id.* at 129-30. The children all hid in the closet where Daughter was still on the phone with 911. James also called 911 and told the operator, "My mother and her boyfriend is arguing. He put his hands on her and he yelled at me. . . . He pulled a rifle on me." Exh. 5 (1:38-52).

[10] Perry continued to argue with Lewis in their bedroom. He reportedly pointed a gun at Lewis and stated he was "going to kill her and everybody else in the house." Tr. Vol. III, p. 70. But Baby soon began to cry, and Lewis took the opportunity to pick up Baby and carry him into the living room. Police arrived moments later.

[11]  The first officer to approach Lewis's home saw Perry through a window holding what appeared to be a weapon. When the officer shined his flashlight into the window, Perry fled to the rear of the house, and Lewis ran out the front door with Baby. Lewis was "frantic, crying," and screaming that Perry was "going to kill [her] kids." *Id.* at 64-65.

[12]  Police detained Perry in the kitchen. Lewis immediately recounted the events of the night to the responding officers. She also told police that she thought Perry hid his weapons in the basement. Police eventually recovered a loaded shotgun and a loaded revolver from downstairs.

[13]  Based on these events, Perry was charged with multiple felonies and ultimately went to trial on the following offenses:

- Count 1: Criminal Confinement of Lewis (as a Level 3 felony)
- Count 2: Intimidation of Lewis (as a Level 5 felony)
- Count 3: Intimidation of James (as a Level 5 felony)
- Count 4: Domestic Battery of Lewis (as a Level 6 felony)
- Count 5: Pointing a Firearm at James (as a Level 6 felony)
- Count 6: Pointing a Firearm at Lewis (as a Level 6 felony)[1]

[14]  Lewis was not able to testify at Perry's jury trial because she had been killed, allegedly by Perry. In her absence, the responding police officers recounted

---

[1] Perry was also charged with two counts of unlawful possession of a firearm by a serious violent felon, strangulation, and criminal mischief. The trial court later dismissed those charges at the State's request.

Lewis's statements at the scene. James and Daughter also testified as to the events of the night. The jury found Perry guilty on all counts but Count 6.

[15] At sentencing, the trial court merged and vacated the convictions for Count 2 (Intimidation of Lewis) and Count 5 (Pointing a Firearm at James), presumably based on double jeopardy concerns. The court then sentenced Perry to an aggregate term of twenty years in the Indiana Department of Correction (DOC). Perry appeals.

## Discussion and Decision

[16] Perry raises two arguments on appeal. First, he challenges the sufficiency of the evidence supporting his criminal confinement conviction. Second, he argues—and the State agrees—that his abstract of judgment incorrectly lists his convictions for Counts 2 and 5 as "merged" instead of "vacated." Finding sufficient evidence supports Perry's criminal confinement conviction, we affirm. However, we remand for correction of the abstract of judgment.

### I. The Evidence Was Sufficient to Support Perry's Conviction for Criminal Confinement.

[17] When reviewing the sufficiency of the evidence to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We consider only the evidence most favorable to the judgment and any reasonable inferences that can be drawn from it. *Id.* We will affirm if there is substantial evidence of probative value

such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[18] To sustain his conviction for Level 3 felony criminal confinement, the State had to prove that Perry knowingly or intentionally confined Lewis without her consent while armed with a deadly weapon. *See* Ind. Code § 35-42-3-3(b)(3)(A). To "confine" means to "substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1.

[19] Perry argues that the State failed to prove he confined Lewis beyond his acts of domestic battery, which were used to support that separate conviction.[2] His argument is based on *McFadden v. State*, 25 N.E.3d 1271 (Ind. Ct. App. 2015), in which this Court held that "to prove confinement beyond the main crime[s] charged, there must be something more than the act necessary to effectuate the crime[s]." *Id.* at 1274.

[20] The State suggests that Perry's argument is essentially a substantive double jeopardy claim, but it does not engage in the complex analysis such claim requires. More importantly, Perry does not argue that his convictions constitute double jeopardy. We therefore address the argument as Perry presents it: a challenge to the sufficiency of the evidence supporting his criminal confinement

---

[2] Perry also points to the charges of Intimidation of Lewis (Count 2) and Pointing a Firearm at Lewis (Count 6) as relevant underlying crimes. However, Perry's conviction on Count 2 was merged and vacated, and he was acquitted on Count 6. Therefore, we need not consider these charges in our analysis of his argument that independent evidence of confinement was lacking.

conviction. Courts applying *McFadden* have done so within a sufficiency framework. *See, e.g.*, *Mickens v. State*, 115 N.E.3d 520, 524 (Ind. Ct. App. 2018).

[21] Perry's reliance on *McFadden* is misplaced. In that case, this Court found insufficient evidence to support a conviction for criminal confinement where a defendant pushed, hit, kicked, and pulled a victim's hair during a battery. *McFadden*, 25 N.E.3d at 1274. We noted that beyond the acts constituting the battery, there was "no direct evidence of confinement," and though the victim testified at trial, he never stated "that he felt confined." *Id.* We concluded that an "inference of confinement does not arise from evidence of injury to the victim." *Id.* at 1274-75. But here, no such inference was required, and there is no absence of direct evidence of confinement.

[22] Perry engaged in a series of acts over the course of the night which demonstrate that he confined Lewis, separate from his battery of her. At trial, the State argued that the domestic battery was based on Perry's acts of grabbing Lewis by the neck, dragging her to the bedroom, and throwing her on the bed. On the other hand, the criminal confinement—specifically charged as having been committed while Perry was armed with a deadly weapon—was based on Perry's subsequent acts. He pulled out a gun from behind the door threshold and pointed it at James when she came to help Lewis, who was in the bedroom behind Perry. Perry then ordered James to "get the f**k out" and, while still wielding the gun, told Lewis that he was going to "kill her and everyone in the house." Tr. Vol. III, p. 70.

[23] Based on these actions, a reasonable jury could find that Perry substantially interfered with Lewis's liberty and that Lewis did not feel free to leave the bedroom. The absence of direct testimony from Lewis that she felt confined does not undermine this finding. Unlike the victim in *McFadden*, who testified at trial but did not say he felt confined, Lewis could not testify at all because she was killed before Perry's trial. Nor does the fact that Lewis eventually exited the bedroom defeat confinement. *See Crabtree v. State*, 470 N.E.2d 725, 727 (Ind. 1984) ("[T]he fact that a victim is able to break away from the confinement does not negate the determining factor that a jury could find, beyond a reasonable doubt, that a nonconsensual confinement took place.").

[24] Perry also takes issue with the fact that James did not explicitly describe Perry as standing in the doorway. But that is a reasonable inference that can be drawn from the evidence, which included diagrams of the house and bedroom and testimony that Perry reached behind the "door threshold" for the gun and pointed it out of the room at James, who was walking towards the door. Tr. Vol II, p. 193. Our role on appeal is not to reweigh the evidence. *See Bailey*, 907 N.E.2d at 1005.

[25] For these reasons, we find sufficient independent evidence supported Perry's conviction for criminal confinement.

## II. Remand Is Necessary to Properly Effectuate the Trial Court's Intent to Vacate the Merged Convictions.

[26] Perry next claims that the abstract of judgment erroneously lists the disposition of Counts 2 and 5 as merely "merged" when the trial court ordered the convictions vacated in its oral sentencing statements and written sentencing order. He claims the use of the term "merged" is inadequate to effectuate the trial court's intent to vacate the convictions. We agree.

[27] Perry went to trial on the following charges:

- Count 1: Criminal Confinement of Lewis (as a Level 3 felony)
- Count 2: Intimidation of Lewis (as a Level 5 felony)
- Count 3: Intimidation of James (as a Level 5 felony)
- Count 4: Domestic Battery of Lewis (as a Level 6 felony)
- Count 5: Pointing a Firearm at James (as a Level 6 felony)
- Count 6: Pointing a Firearm at Lewis (as a Level 6 felony)

[28] The jury found Perry guilty on Counts 1-5 but not guilty on Count 6, and the trial court entered judgments of conviction accordingly. At sentencing, the parties agreed that Counts 2 and 5 should merge into Perry's remaining convictions, presumably based on double jeopardy concerns. The trial court agreed and orally vacated Perry's convictions on these counts. The court's intent to vacate the convictions was reflected in its subsequent written sentencing order, which noted that the two counts "merge and the court vacates the judgment of conviction." App. Vol. III, p. 140. The court's Chronological Case Summary also omits Counts 2 and 5 from the list of Perry's standing

convictions, reflecting a vacatur. App. Vol. II, p. 31. However, the abstract of judgment, copied in relevant part below, fails to correctly capture the trial court's actions and intent to vacate. It is ultimately flawed in two ways.

| PART I | The Defendant was charged with the following crimes under the above-referenced cause: | | |
|---|---|---|---|
| COUNT | CRIME | STATUTORY CITATION | DISPOSITION |
| I | 35-42-3-3(a)(b)(2)(A)/F3: Criminal Confinement; armed with a deadly weapon | 35-42-3-3(a)(b)(2)(A) | Finding of Guilty |
| II | 35-45-2-1(a)(1)/F5: Intimidation: Defndant draws or uses a deadly weapon | 35-45-2-1(a)(1) | Conviction Merged |
| III | 35-45-2-1(a)(1)/F5: Intimidation: Defndant draws or uses a deadly weapon | 35-45-2-1(a)(1) | Finding of Guilty |
| IV | 35-45-2-1(a)(1)/F5: Intimidation: Defndant draws or uses a deadly weapon | 35-45-2-1(a)(1) | Finding of Guilty |
| V | 35-42-2-1.3(a)(1)/F6: Domestic Battery committed in the presence of a child less than 16 years old | 35-42-2-1.3(a)(1) | Conviction Merged |
| VI | 35-47-4-3(b)/F6: Pointing a Firearm at Another | 35-47-4-3(b) | Finding of Not Guilty |

App. Vol. III, p. 145.

[29] First, the abstract misstates Perry's offenses. It erroneously adds a third count of Intimidation (when there should only be two) and omits the second count of Pointing a Firearm at Another. This mistake creates a mismatch in the numbering of the counts, and as a result, the abstract appears to "merge" the wrong conviction for Count 5. The trial court actually merged and vacated Perry's conviction for Pointing a Firearm at James, not his Domestic Battery conviction.

[30] Second, the abstract of judgment incorrectly shows the disposition of Counts 2 and 5 as merely "merged" without indicating that they were vacated, as the trial court intended. As this Court has explained, "[a] trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation." *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008). When

two convictions cannot stand under double jeopardy principles, the proper remedy is to vacate one conviction, rather than merge convictions. *See id.*

[31] While the State correctly notes that the abstract of judgment is not the final judgment of conviction and that the trial court's sentencing order is controlling, the abstract of judgment is the document sent to DOC. *See Robinson v. State*, 805 N.E.2d 783, 793-94 (Ind. 2004). To avoid any confusion about Perry's convictions, the abstract of judgment should accurately reflect the trial court's final judgments of conviction.

[32] Because of the trial court's clear intent to vacate Counts 2 and 5, we remand with instructions to correct the abstract of judgment. *See Willey v. State*, 712 N.E.2d 434, 446 n.8 (Ind. 1999) (holding that remand for correction of error is appropriate where trial court's intent is unambiguous). The abstract should reflect that Count 2 (Intimidation of Lewis) and Count 5 (Pointing a Firearm at James) were vacated, not simply merged. It should also accurately list the offenses with which Perry was charged. Ultimately, the abstract should reflect Perry's standing convictions for Criminal Confinement (Count 1), Intimidation of James (Count 3), and Domestic Battery (Count 4).

## Conclusion

[33] We affirm Perry's conviction for criminal confinement but remand for correction of the abstract of judgment, which improperly lists Perry's offenses and merges, without vacating, two convictions.

Affirmed in part, remanded in part.

May, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Sean C. Mullins
Appellate Public Defender
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana